1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8   WAYNE WRIGHT,                    )   No. 2:08-cv-00280-SPK
                                     )
9                   Plaintiff,       )
                                     )
10       v.                          )
                                     )
11  CORRECTIONAL HEALTH              )
    SERVICES, ET AL.                 )
12                                   )
                    Defendants.      )
13  _____ )

14      ORDER DENYING REQUEST TO PROCEED IN FORMA PAUPERIS

15      WITHOUT PREJUDICE, AND DISMISSING COMPLAINT WITH

16                      LEAVE TO AMEND

17

18          Plaintiff Wayne Wright is a state prisoner proceeding pro se.  Plaintiff seeks

19  relief for alleged civil rights violations pursuant to 42 U.S.C. § 1983.  He has filed

20  a request for leave to proceed *in forma pauperis* (IFP) pursuant to 28 U.S.C. §

21  1915.

22                                  I.

23          Title 28 U.S.C. § 1915 provides in pertinent part as follows:

24      [(a)](2) A prisoner seeking to bring a civil action or appeal a judgment
        in a civil action or proceeding without prepayment of fees or security
25      therefor, in addition to filing the affidavit filed under paragraph (1),
        shall submit a certified copy of the trust fund account statement (or
26      institutional equivalent) for the prisoner for the 6-month period
        immediately preceding the filing of the complaint or notice of appeal,

27

28                                  1

obtained from the appropriate official of each prison at which the prisoner is or was confined.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Here, Plaintiff submitted an amended application to proceed IFP that was was processed in another case he had filed in this court (08-cv-00267-MCE). The application was granted in that other case (08-cv-00267-MCE). Some confusion arose because it was not clear whether the application was meant for this case (08-cv-00280) as well. The application was docketed in both cases, but was given a case number in the other case 08-cv-0267-MCE. A review of the docket sheet in the other case (08-cv-00267-MCE) indicates the order granting that IFP application was returned as undeliverable or as having been sent to the wrong address. The Court will proceed in this case with the assumption that Plaintiff intended to submit the identical IFP application in both cases.

The amended IFP application contains a financial statement of Plaintiff from the Glenn County Jail in Willows, California. However, tn a letter submitted with the application or applications, Plaintiff wrote that "I am no longer at the jail in Sacramento[.]" [Doc. 7, letter dated 3-15-08, at 1]. Plaintiff gave a change of

address and stated "I would ask that I receive notice at my home address that all correspondence has been delivered."  [Id. at 2].  Earlier (a month before his amended IFP application was submitted), court mail addressed to Plaintiff at his place of incarceration had been returned to the court indicating "not in custody." [Doc. 4].  Later, in September 2008, Plaintiff gave the court another change of address at a different private residence in California.  [Doc. 9].

The case was then eventually re-assigned to the undersigned as a visiting district judge.  In January of 2009, the court received a new filing in the other case (08-cv-00267) but not in this case (08-cv-00280-SPK) indicating a change of address and indicating that Plaintiff was now incarcerated or had been transferred to a correctional institution in Cumberland, Maryland.  That filing (in 08-cv-00267) indicated that Plaintiff had been "transferred" to the facility in Maryland. An order re-assigning this case has been sent to the new address at the Western Correctional Institute in Cumberland, Maryland.

It appears that the amended IFP application is incomplete, or was inapplicable if Plaintiff was not in custody when submitted.  In any event, the Court cannot apply the IFP statute based upon the currently-pending application. The IFP statute requires an assessment of an initial partial payment of 20 percent based upon average monthly balances for the prior 6-month period.  28 U.S.C. § 1915(b)(1)(A) & (B).  It requires the agency having custody of the prisoner to forward payments each time the amount in the prisoner's current account exceeds $10.  28 U.S.C. § 1915(b)(2).  This cannot be done without information from the current custodian in Maryland.

Accordingly, the Court will DENY the application to proceed IFP, but the denial will be without prejudice.  The Clerk shall mail plaintiff a copy of the IFP application form and Plaintiff may choose to file a new application.  The Court will

1  impose a deadline of 30 days from the service of this order within which to re-file

2  an amended IFP application.  If this deadline is not met, the action will be subject

3  to dismissal without prejudice.

4                                              II.

5          The court is required to screen complaints brought by prisoners seeking

6  relief against a government entity or officer or employee of a government entity.

7  28 U.S.C. § 1915A(a).  Although the required filing fee has not yet been paid (or

8  the IFP application remains pending), the court has nevertheless screened the

9  complaint to determine whether it sufficiently states a claim.  Having done so, the

10 Court now DISMISSES the complaint with LEAVE TO AMEND.

11         Plaintiff alleges that a variety of Defendants violated constitutional rights

12 with regard to taking away his cane.  He alleges he was an inmate at the

13 Sacramento County main jail when the complaint was filed.  He has named

14 Correctional Health Services, Dr. Dietrich (Chief Medical Doctor), Dr. Smith, Dr.

15 Tomkin, Dr. Mabeus, "LVN [nurse] Suzanne," LVN Kathryn Gonzales, Sheriff of

16 Sacramento County (Sheriff John McGuinness), Deputy Kendrick, Lt. Blea, and

17 Deputy Larkin.  He alleges that Correctional Health Services is the contracted

18 health care provider.

19         He alleges that the doctors and nurses intentionally deprived him of his

20 Eighth Amendment rights, and willfully and intentionally caused cruel and unusual

21 punishment, and were deliberately indifferent to their wanton infliction of pain and

22 torture.  He alleges that Sheriff McGuiness and his deputies aided and abetted these

23 deprivations.

24         He alleges he was arrested on June 5, 2007, when he was housed in a

25 medical unit with a cane.  He stayed until August 27, 2007 with a cane.  He alleges

26 he returned to jail on November 5, 2007 (apparently he had been released in the

27

28                                              4

meantime).  When he returned, he was again placed in a medical unit with a cane.
He alleges that on November 9, 2007, Defendant LVN (licensed vocational nurse)
"Suzanne (Last Name Unknown)" took away his cane without reviewing his
medical charts.  He alleges that, after a complaint, Dr. Tomkin determined he
needed his cane.  He further alleges that, after Nurse Suzanne later stated falsely
that she saw him walking without a cane, Dr. Tomkin took away his cane without
examining him "on the word of Nurse Suzanne."  He alleges that this amounted to
gross negligence and malpractice, and violated his Eighth Amendment rights.  He
claims that no doctor has examined him regarding his cane, as of the time of filing
the complaint.

     He further alleges that Nurse Suzanne has caused 3 other black inmates to
have lost their canes.  He claims a conspiracy between Suzanne and Nurse
Gonzales "to be racist and remove black only devices for mobility."  He states that
Nurse Suzanne and Sheriff Deputy Larkin conspired "to have classification to
remove black inmate from medical floor to cause them undue pain as punishment
for being vocal."  He indicates Sheriff McGuinness knowingly allowed this to
continue.

     Plaintiff alleges that his requests for return of his cane have been of no avail.
He alleges Dr. Smith and Dr. Mabeus stated they "were not going to have anything
to do with [his] cane or pain."  They "stated they did not know what was going on
with [his] cane[.]"

     He further alleges that "Sheriff McGuinness through his Deputy Kendrick
denied me access to see a doctor after being brought down by Lt. Blea . . . . Officer
Kendrick was seen viewing my medical charts and conspiring with 2 nurses to
deny [him] [access] to a doctor."  He alleges the Defendants have been deliberately
indifferent to his pain, Dr. Tomkins is grossly negligent and has committed

1  malpractice, and that Dr. Detrick through his position at Correctional Health
2  Services has caused cruel and unusual punishment and torture upon him.

3      As remedies, Plaintiff seeks (1) to be examined and given his cane back and
4  (2) compensatory damages of $500,000 and punitive damages of $1,000,000.

5                                    III.

6      The above allegations fail to state a claim against medical Defendants Dr.
7  Dietrich, Dr. Smith,  Dr. Mabeus, Kathyrn Gonzales, or other Defendants
8  McGuinness, Kendrick, Blea, and Larkin.

9      Drs. Smith and Mabeus were only alleged to have said they were not going
10 to do anything about his cane because "they did not know what was going on."
11 This is insufficient to state a claim for an Eighth Amendment violation or for
12 malpractice.

13     Dr. Dietrich is apparently named only because he is an official of
14 Correctional Health Services.  He is not alleged to have acted or failed to act on
15 personal knowledge regarding Plaintiff.  This is insufficient to state a claim against
16 him for deliberate indifference or for malpractice.

17     Gonzales is only mentioned as having somehow conspired with Nurse
18 Suzanne regarding treatment based upon race.  There are no specific allegations as
19 to what Gonzales did or did not do.  This is insufficient to state a claim for
20 deliberate indifference or for malpractice.  "Before it can be said that a prisoner's
21 civil rights have been abridged, "the indifference to his medical needs must be
22 substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not
23 support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458,
24 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

25     McGuinness, Kendrick, Blea, and Larkin are not medical professionals and
26 cannot have responsibility for constitutionally deficient medical care where they

27
28                                      6

have no duty to provide medical care.  On the allegations in the complaint, there is a complete lack of detail as to what each did or did not do to cause medical professionals to be deliberately indifferent.  Larkin is alleged only to have removed him from a "medical floor  . . . as punishment for being vocal."  Similarly, the allegations that "Sheriff McGuinness through his Deputy Kendrick denied me access to see a doctor after being brought down by Lt. Blea . . . . Officer Kendrick was seen viewing my medical charts and conspiring with 2 nurses to deny [him] [access] to a doctor" are vague and insufficient to state claims against Kendrick and Blea.  He alleges that McGuinness knowingly allowed this to continue and that McGuinness otherwise denied him access to a doctor "through his deputy Kendrick."  These allegations fail to state a claim against McGuinness.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (rejecting theory that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution).

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.  Here, however, even assuming there was a "serious medical need," the complaint alleges no facts that deprivation of a cane caused any injury to Plaintiff.  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (a prisoner can make "no claim for deliberate medical indifference unless the denial was harmful.").  The Court therefore dismisses the Eighth Amendment claims against these individuals.

Further, 42 U.S.C. § 1983 requires a connection or "link" between the alleged actions of named defendants and the deprivation of the protected right.  *See Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978);  *Rizzo v. Goode*, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The federal rules of pleading require enough specificity to enable a Defendant to have notice of the claim.  *See* Fed. R. Civ. P. 8.  Vague allegations of general deprivations, without more, are insufficient.  *See, e.g.*, *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (1982).  This appears especially so for allegations against a supervisor (such as Defendant McGuinness) for liability based upon status as a supervisor.  *See Iqbal*, 129 S. Ct. at 1949.

Plaintiff also names "Correctional Health Services" as a Defendant.  The complaint alleges that Correctional Health Services is the "contracted care provider."  The Court will assume for present purposes only that Correctional Health Services is functioning as an arm of the government (the State or a municipality) for purposes of a section 1983 civil rights claim.  *See, e.g.*, *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-836 (9th Cir. 1999) (explaining circumstances for private conduct to be "fairly attributable" to government action for purposes of a section 1983 "*Monell* claim" against the government).  The complaint names Dr. Detrich, whom the Court will assume is in a position to be a "policymaker" for Correctional Health Services, also for purposes of a *Monell* claim.  The complaint, however, fails to identify any unconstitutional "custom or policy" of Correctional Health Services itself (e.g., a policy prohibiting canes) or specific actions taken by Detrich on behalf of Correctional Health Services that could constitute the government policy necessary for *Monell* liability.  That is, without specific allegations that Correctional Health

Services itself has an unconstitutional policy or custom, there can be no section 1983 claim against that corporate entity. As currently pled, there is no claim stated against Correctional Health Services.

Finally, as it is apparent that Plaintiff is no longer incarcerated at the Glenn County Jail, and is not in custody of any of the named Defendants, any claim for injunctive relief is moot. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991) (holding that a prisoner's civil rights action seeking injunctive relief that was brought under 42 U.S.C. § 1983 was moot because, after having been transferred from state to federal custody, he was no longer subject to the regulations that he sought relief from). When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. *See Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975) (finding prisoner's due process claim to be moot once he obtained a full release from prison supervision); *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for injunctive relief moot upon his transfer to another prison); *Chronicle Publ'g Co. v. Rison*, 962 F.2d 959, 960 (9th Cir. 1992) (same).

Thus, Plaintiff's claims for injunctive relief (e.g, return of his cane) are dismissed as moot. Plaintiff cannot claim any exception to the mootness doctrine, as there is no indication he will be returned to his former place of incarceration and subjected to the same conditions.

III

For the foregoing reasons, the complaint is DISMISSED. The dismissal, however, is without prejudice to Plaintiff filing an Amended Complaint that attempts to cure deficiencies in the original complaint. The Court will allow Plaintiff 30-days within which to file an Amended Complaint.

Plaintiff is notified that an amended complaint supercedes the prior complaint and must be complete in itself without reference to prior or superceded pleadings. "All causes of action alleged in an original [or prior] complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted).

If an Amended Complaint is not filed within 30-days, the action is subject to dismissal with judgment entering in favor of Defendants.

IV.

Accordingly,

(1)  Plaintiff's pending application to proceed IFP is DENIED without prejudice.  The Clerk shall mail Plaintiff a copy of the court's IFP application form.  Plaintiff has 30-days from service of this order within which to file a new IFP application that complies with 28 U.S.C. § 1915.  Failure to file a new IFP application may result in dismissal of this action without further notice.

(2)  The complaint is DISMISSED without prejudice to filing an amended complaint.  Plaintiff is granted 30-days leave from service of this order within which to file an amended complaint that corrects deficiencies identified in this order.  Failure to file an amended complaint may also result in dismissal of this action without further notice.

IT IS SO ORDERED.

DATED:  July 16, 2009.



Samuel P. King
Senior United States District Judge

10